OPINION
{¶ 1} Defendant-appellant, Liberty Mutual Fire Insurance Company (hereinafter "appellant"), appeals from the decision and judgment entry of the Franklin County Court of Common Pleas granting partial summary judgment in favor of plaintiff-appellee, Clarence W. Johnson (hereinafter "appellee") and denying summary judgment in its favor. For the reasons which follow, we affirm the judgment of the trial court.
 {¶ 2} Appellee is insured under an automobile liability insurance policy (hereinafter "policy") issued by appellant. The effective date of the policy is October 24, 1999.[1] The limit of liability specified in the policy is $100,000. Moreover, the limit of uninsured motorist coverage (hereinafter "UM coverage") specified in the policy is $35,000.00.
 {¶ 3} On March 17, 2000, appellee executed a two-page document entitled "Ohio Uninsured Motorists Property Damage Coverage" on page one and "Ohio Uninsured Motorists Bodily Injury Coverage" on page two (hereinafter "UM form"). Page one of the UM form states as follows, in pertinent part:
For an additional premium over the cost you have selected above, you can have optional Uninsured Motorist Property Damage Coverage. Please indicate your selection below.
*NOTE: This coverage is only available if you have selected Uninsured Motorists Bodily Injury coverage. This coverage is NOT available for vehicles that carry collision coverage.
I SELECT Uninsured Motorist Property Damage Coverage at an annual cost of $12 per vehicle on single-car policies, and $9 per vehicle on multi-car policies. * * *
* * *
I REJECT Uninsured Motorists Property Damage Coverage entirely.
By my signature below, I acknowledge that I have been offered Uninsured Motorists Bodily Injury Coverage limits equal to my Bodily Injury Liability Coverage Limits. I acknowledge Uninsured Motorists Bodily Injury Coverage has been explained to me, I understand the explanation, and I selected Uninsured Motorists Bodily Injury Coverage limits, or rejected that coverage, by checking the appropriate block.
I understand that my selection for Uninsured Motorists Bodily Injury Coverage shall apply to all subsequent renewals regardless of any amendments, substitutions or alternations unless I request otherwise in writing.[2]
The second page of the UM form states as follows, in relevant part:
If you have a Single Limit of Bodily Injury Liability the following Uninsured Motorists Bodily Injury Limits are available:
 Annual Charge Per Vehicle
 Territories Territories Territories All Other
 Territories
 11, 12 10, 15, 79, 80, 83, 84, 93, 99 4, 7, 25, 26, 29, 35, 37,
 45, 78, 81, 82, 94, 95
Per Person/Per Accident Single Multi-Car Single Multi-Car Single Multi-Car Single Multi-Car
 $12,500/25,000 $35 $32 $14 $13 $12 $11 $10 $ 9
Per Accident
 $ 35,000 55 50 26 23 21 19 18 16
 $ 50,000 69 62 36 32 28 25 25 23
 $ 100,000 91 82 56 50 36 32 33 30
 $ 300,000 111 100 76 68 52 47 48 43
 $ 500,000 141 127 111 100 75 68 68 61
 $1,000,000 161 145 131 118 86 77 78 70
 I reject Uninsured Motorists Bodily Injury Coverage entirely.
 {¶ 4} On May 17, 2000, appellee was injured in an automobile accident with an underinsured motorist. Appellee settled with the tortfeasor's liability carrier for $25,000, with appellant's knowledge and consent. Appellant subsequently paid appellee $10,000, representing the amount it believed it was obligated to appellee.
 {¶ 5} On January 9, 2002, appellee instituted a declaratory judgment action against appellant. Specifically, appellee sought a declaration that appellant failed to meet the requirements under Ohio law for a valid offer of UM coverage, thereby invalidating his rejection and permitting appellee to receive UM benefits in an amount equal to his limit of liability, an additional $65,000 in benefits. Appellee filed a partial motion for summary judgment seeking this declaration. Moreover, appellant filed a motion for summary judgment seeking a determination its UM offer and appellee's rejection were valid and in conformity with Ohio law. On June 6, 2003, the trial court sustained appellee's motion for partial summary judgment and denied appellant's motion for summary judgment. The trial court concluded appellant did not make a valid offer under Ohio law. As such, appellee's rejection was invalid and he was entitled to UM coverage in an amount equal to the liability limit contained in the policy.
 {¶ 6} Appellant timely appeals and asserts the following assignment of error:
The trial court erred in determining that Plaintiff-Appellee's election of lower limits did not satisfy the requirement ofLinko v. Indem. Ins. Co. (2000), 90 Ohio St.3d 445 and its progeny.
 {¶ 7} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 8} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip.,Inc. (1991), 58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 9} At issue is the application of R.C. 3937.18, which requires the offering of uninsured and underinsured motorist coverage (hereinafter "UM/UIM coverage"). Over the past few years, R.C. 3937.18 has been amended frequently and the subject of numerous court decisions. However, one constant of R.C.3937.18 has been its prohibition on insurers issuing a policy of automobile liability insurance without first offering the insured UM/UIM coverage in an amount equal to the amount of liability coverage. R.C. 3937.18(A). The failure of an insurer to do so results in the insured acquiring UM/UIM coverage by operation of law. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, 567, citing Abate v. Pioneer Mut. Cas. Co.
(1970), 22 Ohio St.2d 161, 163.
 {¶ 10} R.C. 3937.18(C) permits an insured to select UM/UIM coverage limits less than the limit of liability coverage. Two seminal cases clarifying the offer and rejection requirement of R.C. 3937.18(C)[3] are Gyori, supra, and Linko v.Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445. InGyori, the Supreme Court of Ohio held "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider." Id. at paragraph one of the syllabus. In discussing Gyori, the Linko
court stated: "Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." Id. at 449. The Linko court proceeded to expound upon what is necessary for a written offer to be meaningful. Specifically, the written offer must contain a brief description of the coverage, the premium for the coverage, and an express statement of the UM/UIM coverage limits. Id.
 {¶ 11} To determine the scope of UM/UIM coverage, "the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos.
(1998), 82 Ohio St.3d 281, 289. The version of R.C.3937.18(C)[4] relevant currently is H.B. 26, effective September 3, 1997, which provides, in relevant part:
* * * A named insured's or applicant's rejection of both [UM/UIM] coverages as offered under division (A) of this section * * * shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both [UM/UIM] coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or replacement policy where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer. * * *
 {¶ 12} The presumption established in R.C. 3937.18(C) is rebuttable. Pillo v. Stricklin (Jan. 28, 2002), Stark App. No. 2001CA00203, citing Pillo v. Stricklin (Dec. 31, 2001), Stark App. No. 2001CA00204. Moreover, the requirements of a valid offer established by Linko still apply. Kemper v. Michigan MillersMut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 13} Appellant asserts the trial court erred in holding the UM form failed to comply with Linko for a lack of a definite description of the coverage being offered and for a lack of a definite price term. The trial court concluded the UM form "does not contain a description of the coverage being offered and also does not contain information sufficient for the insured to determine the exact price (annual premium) for the coverage being offered." (June 6, 2003 Decision at 8.) Contrary to the trial court's conclusion, appellant contends the Linko requirements are satisfied when the UM form is incorporated within the policy. In so doing, appellant argues a review of the declaration and the UM form adequately informed appellee the territory he was in and the premium charged for his territory. Therefore, appellant opines appellee signed the election with full knowledge of which territory he was selecting coverage for and the difference in premiums for the various UM coverage limits.
 {¶ 14} Additionally, while noting Linko does not specify what constitutes a proper description of UM coverage, appellant asserts the UM form complies with Linko. Specifically, the UM form designates appellee was offered UM coverage defined as uninsured motorists bodily injury coverage with limits equal to the bodily injury liability coverage limits. Further, the UM form indicates, by endorsement, appellee confirms UM coverage was adequately explained to him.
 {¶ 15} Appellant's final argument involves the admissibility of extrinsic evidence. In the event the UM form fails to comply with Linko, appellant contends extrinsic evidence, in the form of the deposition testimony of Linda Bowser, a personal sales insurance representative employed by appellant, should be considered to demonstrate the Linko requirements are satisfied. In support of its position, appellant relies upon the recent decision, Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849. Appellant maintains the Galatis court emphasized the intent of the parties. By so doing, the Galatis
court affirmatively answered the issue left open by the Linko
court of whether extrinsic evidence could be presented to overcome the presumption that a rejection is valid.
 {¶ 16} In response, appellee asserts the trial court properly determined appellant did not make a valid offer of UM coverage. First, the UM form does not contain any description of UM coverage. Appellee asserts appellant's argument Linko does not designate what constitutes a proper description of UM coverage is irrelevant as the UM form is devoid of any description or explanation of UM coverage. Second, the UM form does not include the premium information necessary to make it a valid offer pursuant to Linko. Specifically, the UM form fails to specify the territory number which was necessary to determine the applicable premium. Thus, the trial court's conclusion UM coverage equal to liability coverage arose by operation of law is appropriate.
 {¶ 17} Moreover, appellee maintains appellant's assertion the UM form should be construed in conjunction with the entire policy is problematic. First, appellee was not provided with the declaration, which contained the territory information, contemporaneously with the UM form. Second, the entire policy was not submitted to the trial court and, thus, is not a proper part of the record on appeal.
 {¶ 18} As to extrinsic evidence, appellee concedes Galatis
appears to authorize the consideration of the parties' intent as to the scope of UM coverage in a commercial auto policy. Notwithstanding, Galatis neither addressed the requirements of a valid offer and rejection or reduction of UM coverage nor overruled the holding of Linko. Further, appellee questions appellant's interpretation of Linko. Contrary to appellant, appellee does not believe Linko left open the issue of whether extrinsic evidence was allowed to overcome the presumption that a rejection of UM coverage is valid. Instead, appellee maintainsLinko specifically mandates the offer of UM coverage must be in writing, evidenced within the four corners of the document, and extrinsic evidence is not admissible.
 {¶ 19} Finally, appellee contends the issue of the admissibility of extrinsic evidence is moot in this case as appellant's evidence, the deposition testimony of Ms. Bowser, is not admissible on other grounds. Ms. Bowser's admission appellee would have been furnished the additional information necessary to determine the premium at issue was not based on personal knowledge. Thus, regardless of whether extrinsic evidence is admissible, Ms. Bowser's testimony is not admissible under fundamental evidence rules.
 {¶ 20} In Campbell v. Westfield Ins. Co., Franklin App. No. 02AP-1369, 2003-Ohio-5448, we recently faced the issue of whether a valid written offer of UM/UIM coverage, which satisfied the requirements of R.C. 3937.18(C) and Linko, must be contained to a one-page document or whether numerous documents may be examined. Upon examination, we held the Linko requirements must be contained within a one-page document:
An examination of Linko results in the conclusion the requirements of a valid offer must be contained within a one page form.² The Linko court did not discuss the language or contents of the policy to determine whether the insurer made a valid offer. Instead, the Linko court focused solely on whether the offer and rejection form contained the valid offer requirements. Moreover, mandating the Linko requirements be contained within the offer and rejection form is in accord with the public policy concern motivating Gyori and Linko. Thus, permitting a party to demonstrate compliance with Linko by pointing to various documents, none of which in toto, comply, emasculates the policy of an express and knowing rejection.
²The majority of courts appear to focus solely on the offer/rejection form executed by the insured. See Purvis [v.Cincinnati Ins. Co. (2002), 96 Ohio St.3d 1485], 2002-Ohio-4478,Edstrom v. Smith (2002), Franklin App. No. 01AP-1009, 2002-Ohio-3334; Pillo (2002). However, in Shindollar v. ErieIns. Co. (2002), 148 Ohio App.3d 537, 544, 2002-Ohio-2971, the court considered the contents of the automobile application and rejection form. However, it should be noted the Shindollar
court did not examine the policy language.
Campbell, at ¶ 26.
 {¶ 21} A similar result was reached in Branch v.Lapushansky, 153 Ohio App.3d 170, 2003-Ohio-3465:
It goes without saying that a meaningful offer of UM/UIM insurance is an offer which not only contains the information required by Linko, but also contains that information in a manner which is easily accessible to and understandable by the customer. This means the information Linko requires must not merely be available to the customer somewhere in the printed forms the insurance company provides during the course of the insurance relationship as argued by the dissent. In order to be meaningful, that information must also be conspicuous, easily understandable and contemporaneous to the time the customer is rejecting UM/UIM coverage. This may be accomplished by having the necessary information in the rejection form or incorporating other forms which contain that information into the rejection form by reference. See Palmer v. Ohio Mut. Ins. Group, 7th
Dist. No. 865, 2002-Ohio-6908.
In conclusion, in order to make a written offer of UM/UIM coverage pursuant to R.C. 3937.18(C), an insurance company must provide the information required by Linko in a manner which is conspicuous, easy to understand and contemporaneous to the time the customer is contemplating rejecting that coverage. Thus, this information must either be in a rejection form or documents which are incorporated into the rejection form by reference.
Id. at ¶ 23-24.
 {¶ 22} Turning to the UM form in the instant action, we conclude it fails to comply with the Linko requirements. First, it is devoid of a brief description of the coverage being offered.[5] While an adequate description may be contained within the policy, it is not referenced in the UM from. Moreover, the policy may not be considered as it was not part of the record before the trial court.
 {¶ 23} Second, with respect to the premium, the UM form does not contain sufficient information for appellee to determine the appropriate premium for the coverage being offered. To determine the appropriate premium, it is necessary to know the applicable territory number. Nevertheless, it is absent from the UM form. While this information is contained in the declaration, there is no reference to the declaration in the UM form. Moreover, the declaration was not issued until March 27, 2000, ten days after the execution of the UM form, making it impossible to be incorporated by reference into the UM form. As such, the UM form fails to satisfy the requirements of Linko and is not a meaningful offer. Thus, appellee was unable to make an express and knowing rejection of the UM coverage.
 {¶ 24} In Campbell, supra, we also examined whether extrinsic evidence could be considered when deciding whether an offer and rejection of UM/UIM coverage complied with Linko. In concluding extrinsic evidence may not be considered, we focused on the following language in Linko:
In Gyori this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. * * * By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that awaiver was knowingly and expressly made by each of the namedinsureds.
 Campbell, ¶ 30 citing Linko, supra, at 343 (emphasis in original added).
 {¶ 25} Since our decision in Campbell, the Supreme Court of Ohio decided Galatis. We do not believe this alters our analysis in Campbell. We are not inclined to read Galatis as advocating the use of extrinsic evidence to ascertain the parties' intent. First, the Galatis court, while discussing the intent of the parties, continued to stress the contractual language of the policy. "Scott-Pontzer [v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660] ignored the intent of the parties to the contract. Absent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees." Galatis, at ¶ 39. TheGalatis court did not refer to the use of extrinsic evidence during this discussion. There was no mention of relying upon deposition transcripts or affidavits. Accordingly, we do not believe the use of the phrase "intent of the parties" was anticipated by the Galatis court to permit the admission of extrinsic evidence to establish a knowing and expressly made waiver of UM/UIM coverage.
 {¶ 26} Second, there is no reference to Linko in theGalatis decision. As such, we are hesitant to conclude the Supreme Court of Ohio intended to reverse its explicit holding inLinko. In other words, without the Supreme Court specifically stating so and explaining its reasons for changing its position, we conclude extrinsic evidence is not admissible to prove a waiver of UM/UIM coverage was knowingly and expressly made. Support for this position is found in the fact this is precisely what the Supreme Court did in Galatis as to the holding ofScott-Pontzer.
 {¶ 27} Moreover, even if the Supreme Court did intend to permit the admission of extrinsic evidence to determine whether a waiver of UM/UIM coverage was knowingly and expressly made, we are still unable to consider the deposition of Ms. Bowser. As argued by appellee, Ms. Bowser does not have personal knowledge of the circumstances surrounding appellee's execution of the UM form. Thus, we are prohibited from considering Ms. Bowser's deposition testimony.
 {¶ 28} Accordingly, appellant's offer of UM coverage fails to meet the requirements of Linko and appellee's execution of the UM form was not valid. Therefore, by operation of law, appellee acquired UM coverage equaling the amount of liability coverage provided under the policy, which is a difference of $65,000.
 {¶ 29} Accordingly, appellant's sole assignment of error is hereby overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus, P.J., and Klatt, j., concur.
[1] We note the trial court erroneously stated the effective date of the policy to be March 17, 2000. The record reflects a declaration, issued March 27, 2000, effective March 17, 2000. The declaration references the policy and the policy period, commencing on October 24, 1999. The change made by the declaration was to remove Mary L. Johnson as operator 1.
[2] Neither the "reject" nor the "select" boxes were checked.
[3] The version of R.C. 3937.18(C) discussed in Gyori andLinko was enacted by S.B. 20, effective October 20, 1994.
[4] As H.B. 261 is the only version of R.C. 3937.18 which is relevant to our decision currently, we will refer to H.B. 261 R.C. 3937.18 as R.C. 3937.18.
[5] {¶ a} In Campbell, supra, we expressed our position that the offer and rejection form in Edstrom v. UniversalUnderwriters Insurance Co., Franklin App. No. 01AP-1009, 2002-Ohio-3334, exemplifies a brief description of UM/UIM coverage which complies with Linko. The Edstrom offer and rejection form stated, in pertinent part:
{¶ b} "Uninsured Motorist Coverage (U.M.) provides protection against owners or operators of uninsured motor vehicles. An uninsured motor vehicle is (1) not covered by some form of liability insurance coverage or (2) operated by a hit and run driver.
{¶ c} "Underinsured Motorist Coverage (U.I.) provides protection against owners or operators of at-fault underinsured motor vehicles. An underinsured motor vehicle is covered by some form of liability insurance, but that liability insurance coverage is not sufficient to full[y] compensate you for your damages."
{¶ d} (Elective Options Form, Exhibit to defendant Universal Underwriters Insurance Co. September 2, 2001 Motion for Partial Summary Judgment and Memorandum Contra.)