BRANCH et al., Appellants,

v.

LAPUSHANSKY, Appellee.

[Cite as *Branch v. Lapushansky,* 153 Ohio App.3d 170, 2003-Ohio-3465.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 143.

Decided June 18, 2003.

Kelly L. McLaughlin, for appellants.

Pfau, Pfau & Marando and John Pfau, for appellee.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiffs-appellants, Travis Branch and Pami Patrick, appeal the judgment of the Mahoning County Court of Common Pleas denying their motion for summary judgment and granting summary judgment for defendant-appellee, Grange Mutual Casualty Company. We are asked to decide whether Travis's father, Stephen Branch ("Branch"), validly rejected uninsured/underinsured motorist coverage, and, if not, whether appellants are entitled to double recovery under the terms of the policy. In making this decision, we must first determine whether Grange made a valid offer of UM/UIM coverage to Stephen. We conclude that a meaningful offer of UM/UIM coverage must contain all the necessary information in a manner which is both conspicuous and easy to understand so that the insured can make an informed choice when rejecting that coverage. In this case, Grange failed to provide Stephen with that information. However, we also conclude that appellants are not entitled to double recovery under the terms of the statute. Accordingly, the trial court's decision is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

{¶ 2} On June 14, 1997, Travis was driving a truck owned by Stephen, with Pami as his passenger. The truck was struck from behind by a van driven by an underinsured motorist, Edward Lapushansky, injuring both Travis and Pami. As a result of the collision, Travis and Pami filed a complaint against, among others, Grange, with whom Stephen had insured the truck that Travis had been driving.

{¶ 3} Stephen first purchased automobile insurance coverage from Grange in 1987, which included UM/UIM coverage. On two different occasions, in 1992 and in 1995, Stephen signed documents titled, "Personal Policy Change Request." At the bottom of those documents were notes stating, "No UM on any vehicles" and "delete UM," respectively. Based on these facts, both plaintiffs and Grange moved for summary judgment. Travis and Pami sought to recover UM/UIM coverage from Grange and to be doubly indemnified under the terms of the insurance policy. Grange argued that Stephen had rejected UM/UIM coverage and that, therefore, Travis and Pami were precluded from recovering from

Grange. The trial court denied plaintiffs' motion for summary judgment, finding that there was no UM/UIM coverage on the vehicle Travis had been driving.

{¶ 4} Appellants' sole assignment of error asserts:

{¶ 5} "The Court of Common Pleas for Mahoning County erred in granting defendant/appellee Grange Mutual Casualty Company's motion for summary judgment and in denying plaintiffs/appellants Travis Branch and Patrick's motion for summary judgment as no genuine issue of material fact in the instant case exists, and plaintiffs/appellants are entitled to judgment on all issues as a matter of law."

{¶ 6} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

{¶ 7} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

{¶ 8} Appellants present two issues for this court's review. As Stephen's rejection of UM/UIM coverage is not valid without a proper offer of that coverage, we must decide whether Grange properly offered UM/UIM coverage in the first place. We conclude that Grange did not prove it offered UM/UIM coverage in the manner contemplated by R.C. 3937.18(C) because it did not provide the required information in a manner which is conspicuous, easy to understand and contemporaneous to the time the customer is contemplating rejecting that coverage. Second, appellants assert that they are entitled to double recovery pursuant to the double indemnity provisions contained in the insurance policy. Because we conclude that the double indemnity provision of Stephen's policy referred to Grange's liability for medical payments rather than its liability under the UM/UIM responsibilities, appellants were not entitled to double recovery in this case.

{¶ 9} Appellants are asking this court to determine the scope of the UM/UIM coverage under the relevant policy. When determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time that the contract for automobile liability insurance was entered into controls the rights and duties of the contracting parties. *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. In this case, the accident happened on June 14, 1997. The applicable policy was issued on May 14, 1997. The statute that covers UM/UIM insurance, R.C. 3937.18, was amended in 1997, and that amendment became effective September 3, 1997. Accordingly, the version of R.C. 3937.18 prior to the 1997 amendments governs this appeal.

{¶ 10} Under the controlling version of R.C. 3937.18, insurance companies must offer UM/UIM coverage with every automobile liability policy issued. R.C. 3937.18(A). If the insurer does not make this offer, then the insured acquires UM/UIM coverage by operation of law. Id. The purpose of the requirement is "to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 258 N.E.2d 429; see also *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438. "Given this express statutory purpose, * * * the uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 38, 54 O.O.2d 166, 266 N.E.2d 566; see, also, *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197 (uninsured motorists statute is remedial legislation); R.C. 1.11 (remedial legislation must be construed liberally in order to promote the purpose of the statute).

{¶ 11} Because R.C. 3937.18 must be construed liberally to make sure that coverage is provided to persons injured by the acts of uninsured motorists, the Ohio Supreme Court has held UM/UIM coverage may only be eliminated or reduced by a written, express, and knowing rejection of such coverage received by the insurer prior to the commencement of the policy period. *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, at paragraph two of the syllabus; R.C. 3937.18(C). A rejection of UM/UIM coverage is not knowing unless the offer of that coverage contains (1) a statement that the insured is entitled to UM/UIM coverage, (2) a brief description of the coverage, (3) the premium for that coverage, and (4) an express statement of the UM/UIM coverage limits. *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 449, 739 N.E.2d 338; *Poulton v. Am. Economy Ins. Co.*, 5th Dist. Nos. 2002–CA–00038 and 2002–CA–00061, 2002-Ohio-7214, 2002 WL 31883646, ¶ 24. If any of these elements are absent, then there is no express offer and, therefore, no

knowing rejection and the insured is entitled to UM/UIM coverage by operation of law. Id. "Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds." Id. at 450, 739 N.E.2d 338.

{¶ 12} Under the applicable version of the statute, the burden of establishing an offer of UM/UIM coverage lies with the insurer. *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 433 N.E.2d 547. Once an insured has rejected an initial offer of UM/UIM coverage, an insurer is not required to re-offer UM/UIM coverage, or obtain an additional rejection, for any renewal policy thereafter unless the insured requests it in writing. *Hammer v. Lumbermens Mut. Cas. Co.* (Aug. 20, 1999), 6th Dist. No. L–98–1283, at 3–4, 1999 WL 628684.

{¶ 13} Clearly, the forms Stephen signed do not contain the information required by *Linko*. Indeed, they are "Personal Policy Change Request" forms which do not appear to contemplate a rejection of UM/UIM insurance. Stephen's "rejection" is a handwritten statement at the bottom of each form saying no UM on any vehicle. Appellants contend that his rejection is invalid because the insurance company must be able to point to a single document which can constitute an offer for the purposes of R.C. 3739.18. According to appellants, a liberal construction of R.C. 3937.18 mandates that all the *Linko* elements must be contained in a single rejection form or incorporated by reference into that rejection form in order to effectuate the purpose of that statute. According to appellants, such a conclusion arises for the same reason that *Gyori* found that the offer had to be in writing. In contrast, Grange argues that we may look to documents outside the rejection form and not incorporated by reference into that form which Grange sent to appellants during the course of the insurance relationship to see whether Grange's offer of UM/UIM coverage satisfied the *Linko* requirements.

{¶ 14} In *Johnston v. Wayne Mut. Ins. Co.*, 4th Dist. No. 02CA3, 2002-Ohio-6157, 2002 WL 31522569, the Fourth District was faced with a similar fact pattern. Johnston had continuous automobile-liability insurance through Wayne Mutual since 1993, and the original policy provided UM/UIM coverage to Johnston. Id. at ¶ 6–7. In 1996, Johnston signed documents purporting to reject UM/UIM coverage. Id. at ¶ 8–10. Johnston was injured in an automobile accident in 1998. Id. at ¶ 11.[1] On appeal, the insurance company acknowledged that the rejection forms did not comply with the *Linko* requirements.

---

1. The dissent claims that the insured in *Johnston* rejected UM/UIM coverage from the outset and uses this fact to distinguish this case from *Johnston*. Given our later discussion, this is a distinction without a difference as the fact that the insured previously had UM/UIM coverage

{¶ 15} "This document explained that 'Ohio law requires us to offer limits of liability for Uninsured Motorists Bodily Injury Coverage * * * equal to your coverage for Bodily Injury * * * Liability.' A box was then checked next to a paragraph indicating the following: 'I do not wish to purchase [UM/UIM coverage] limits equal to the [bodily-injury coverage] of my policy. I wish to purchase limits of [$25,000] each person, [and $50,000] per accident.'" Id. at ¶ 8.

{¶ 16} Thus, the form failed to set forth the premium for UM/UIM coverage, the precise amount of UM/UIM coverage, or describe that coverage. Id. at ¶ 50.

{¶ 17} On appeal, the insurance company argued that even though the rejection form did not contain all the *Linko* requirements, the insured's rejection was still valid since " 'at the time [Ms. Johnston] signed the rejection form, she had been provided all the necessary information as required by the *Linko* case * * *.' " Thus, Wayne Mutual looks to evidence outside of the rejection form—specifically, deposition testimony and the declaration pages of the original policy—to support its argument that Ms. Johnston's rejection of UM/UIM coverage was in compliance with *Linko*." Id. at ¶ 51.

{¶ 18} The Fourth District rejected the insurance company's argument. It concluded that the evidence outside the rejection form, the deposition testimony and the original declarations page, was evidence extrinsic to the rejection form and, therefore, *Linko* barred the consideration of that evidence. We agree with the Fourth District's conclusion. However, we must expand on its reasoning to more fully explain why the *Linko* requirements must be found either in the rejection form or in a document incorporated into that form.

{¶ 19} The Ohio Supreme Court has stated that Ohio's UM/UIM statute should be liberally construed in favor of providing people with coverage when they are injured by an uninsured or underinsured motorist. See *Curran*. Thus, the Ohio Supreme Court held that an insured is entitled to UM/UIM coverage even when the third-party tortfeasor could have made a successful claim against his own liability insurer if he had been insured, such as when that tortfeasor commits an intentional tort. *Kish v. Cent. Natl. Ins. Group of Omaha* (1981), 67 Ohio St.2d 41, 46, 21 O.O.3d 26, 424 N.E.2d 288. Additionally, UM/UIM coverage is not limited to cases where the insured is the person who sustained the bodily injury. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 434–435, 23 O.O.3d 385, 433 N.E.2d 555. Finally, a policy which eliminates uninsured motorist coverage for persons who are injured while occupying a motor vehicle owned by an insured but not specifically listed in the policy violates R.C. 3937.18 and is therefore invalid. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio

does not demonstrate that the insured provided all the *Linko* information in the contract prior to the insured's rejection of that coverage.

St.3d 478, 482, 639 N.E.2d 438. Thus, the Ohio Supreme Court has consistently interpreted R.C. 3937.18 in a manner which provides UM/UIM coverage to as broad a class of people as possible.

{¶ 20} More relevant to the issue currently before us is the way the Ohio Supreme Court has consistently curtailed an insurance company's ability to limit the UM/UIM coverage it provides to its insureds, which also arises from the liberal construction of the statute in favor of the insured. Thus, restrictions placed on UM/UIM coverage in a policy must be both reasonable and reasonably specific or they will violate the public policy embodied in R.C. 3937.18. *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 300–301, 23 O.O.3d 281, 432 N.E.2d 167; *Orris v. Claudio* (1980), 63 Ohio St.2d 140, 142–143, 17 O.O.3d 85, 406 N.E.2d 1381. Likewise, a restriction of or exclusion from UM/UIM coverage must be conspicuous within the policy, its terms must be easily understood by the customer, and the customer must voluntarily agree to the restriction or exclusion. *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 599, 23 O.O.3d 495, 433 N.E.2d 547.

{¶ 21} "Insurance companies write the policies and present the pre-printed forms to customers, most of whom are unfamiliar with terminology found in the multi-page policies. Most customers accept the policies *in toto* and do not question, let alone actively negotiate to change or omit, any of the provisions in the pre-printed forms. Therefore, an insurance company has the burden of showing that any rejection was knowingly made by the customer. A customer has the option of rejecting coverage. However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it. Thus, any rejection or exclusion should be conspicuous so that a customer is aware of its existence. Furthermore, the language should be clear and easily understood by a lay person. Also there should be evidence that the customer agreed to the restriction on coverage." (Footnote omitted.) Id. at 597, 23 O.O.3d 495, 433 N.E.2d 547.

{¶ 22} It is precisely because of the consistent manner in which the Ohio Supreme Court has liberally construed R.C. 3937.18 in favor of the insured that it recognized it would be in "the spirit of" the statute to require that an offer be in writing, even though the statute does not specifically list that requirement. *Gyori* at 568, 669 N.E.2d 824. As the court stated, it is the insurance company which bears the burden of proof with respect to rejection and, by operation of statute, bears the cost of a misunderstanding. Id. *Linko* applied this rule further by defining what an offer must contain so it is meaningful in substance and not just in name. *Linko* at 449, 739 N.E.2d 338. Ohio courts have refused to make an exception to the requirements of *Gyori* and *Linko* even when the insured is an insurance agent who is familiar with and understands UM/UIM

coverage. *Shindollar v. Erie Ins. Co.*, 148 Ohio App.3d 537, 2002-Ohio-2971, 774 N.E.2d 316.

{¶ 23} It goes without saying that a meaningful offer of UM/UIM insurance is an offer which not only contains the information required by *Linko*, but also contains that information in a manner which is easily accessible to and understandable by the customer. This means that the information *Linko* requires must not merely be available to the customer somewhere in the printed forms the insurance company provides during the course of the insurance relationship as argued by the dissent. In order to be meaningful, that information must also be conspicuous, easily understandable and contemporaneous to the time the customer is rejecting UM/UIM coverage. This may be accomplished by having the necessary information in the rejection form or incorporating other forms which contain that information into the rejection form by reference. See *Palmer v. Ohio Mut. Ins. Group*, 7th Dist. No. 865, 2002-Ohio-6908, 2002 WL 31813092.

{¶ 24} In conclusion, in order to make a written offer of UM/UIM coverage pursuant to R.C. 3937.18(C), an insurance company must provide the information required by *Linko* in a manner which is conspicuous, easy to understand, and contemporaneous to the time the customer is contemplating rejecting that coverage. Thus, this information must either be in a rejection form or documents which are incorporated into the rejection form by reference. The rejection form in this case fails to comply with this requirement. Thus, the trial court erred when it granted summary judgment to Grange, and it should have granted summary judgment to appellants. This portion of appellants' assignment of error is meritorious.

{¶ 25} Because we conclude that appellants were entitled to UM/UIM coverage by operation of law, we must now consider their second argument within this assignment of error. Appellants argue that they were entitled to recover under a double-indemnity provision within their contract as they were wearing seat belts at the time of the collision. That provision stated, "The Limit of Liability shown in the Declarations for this coverage shall be increased 100 percent for any insured who is using an approved motor vehicle passive restraint system at the time of the accident." Grange argues that that provision does not apply in this case as it applied to medical payments coverage under Part B of the policy rather than the uninsured motorists coverage found in Part C of the policy.

{¶ 26} Stephen's automobile policy with Grange at the time of the accident described four different types of coverage: (1) liability coverage, (2) medical payments coverage, (3) uninsured motorists coverage, and (4) coverage for damage to the insured's automobile. On page 100 of the appendix, the policy described the limits of Grange's liability for medical payments arising out of any

one accident. The second paragraph describing the limits of liability is the double-indemnity provision described above. On page 108 of the appendix, the policy described the limits of Grange's liability for uninsured motorists coverage. That section contains no provision for double recovery.

{¶ 27} The provision appellants argue provides them double recovery states that it applies to the "Limit of Liability shown in the Declarations *for this coverage.*" (Emphasis added.) The coverage it was describing was the medical payments coverage, not the uninsured motorists coverage. Accordingly, this provision does not provide appellants double recovery. The trial court did not err when it denied appellants' motion for summary judgment on this issue. This portion of appellants' assignment of error is meritless.

{¶ 28} In conclusion, the trial court erred when it failed to grant summary judgment to appellants on the issue of whether they were provided UM/UIM coverage as a matter of law. However, appellants' argument that they were entitled to double. recovery under the statute is meritless as a matter of law.

{¶ 29} Accordingly, the trial court's decision is affirmed in part and reversed in part, and this case is remanded for further proceedings.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

VUKOVICH, J., concurs.

WAITE, P.J., dissents.

WAITE, Presiding Judge, dissenting.

{¶ 30} I must dissent from the opinion of the majority because I believe summary judgment was properly granted in favor of appellees. While I agree that appellants are not entitled to double recovery under the provisions of their policy, based on the fact that I would uphold this decision to grant summary judgment. I find it unnecessary to reach appellants' double-recovery argument.

{¶ 31} I cannot join the majority's conclusion that Stephen's rejection of his UM/UIM coverage was invalid. The record demonstrates that when Stephen rejected UM/UIM coverage he made an informed decision to do so. Under the circumstances, the rejection was valid, and appellants are not entitled to the coverage they seek. The majority's decision greatly expands R.C. 3937.18 and our Supreme Court's decision in *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, well beyond that contemplated by the court or the General Assembly. Since I see no logical reason to expand upon an already expansive interpretation of a statutory provision that has been

invalidated by replacement provisions, I would overrule this assignment of error and affirm the trial court's decision to grant summary judgment in favor of Grange.

{¶ 32} The version of R.C. 3937.18 in effect at the time Stephen first sought coverage, and consequently the version that applies to this case, required that an offer of insurance contain three things: (1) a brief description of the coverage, (2) the premium for that coverage, and (3) an express statement of the UM/UIM coverage's limits. Appellants essentially maintain that since Grange could not produce any single document that purported to offer UM/UIM coverage to Stephen, his subsequent rejection of such coverage was not valid. Appellants predicate this proposition on the Supreme Court's reasoning in *Gyori*, supra.

{¶ 33} Appellants also direct this court to *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, which held that a court may not look beyond the four corners of the insurance agreement to ascertain the existence of a valid insurance offer. Id. at 447, 739 N.E.2d 338. Appellants contend that because the document which contained Stephen's rejection of the UM/UIM coverage did not also contain a written offer of insurance coverage as contemplated under former R.C. 3937.18, the *Gyori* and *Linko* decisions render Stephen's rejection invalid and appellants are entitled to UM/UIM coverage. The majority evidently agrees with this interpretation.

{¶ 34} The *Linko* and *Gyori* decisions sought to facilitate and simplify the court's ability to determine whether coverage had been offered and rejected by requiring such coverage to be apparent from the contract itself. Accordingly, either the offer and rejection are somewhere in the body of the insurance contract or they are not. *Linko*, supra, at 450, 739 N.E.2d 338. As the court remarked in *Gyori*, written offers "will prevent needless litigation about whether the insurance company offered UM coverage." Id. at 568, 669 N.E.2d 824.

{¶ 35} The initial issue in this case is not whether Stephen's rejection of the Grange policy UM/UIM coverage was valid but whether Grange properly offered the coverage in the first place. The record establishes that long before the accident occurred which lead to the insurance claim involved in this appeal, Stephen had expressly rejected UM/UIM coverage.

{¶ 36} In 1987, when Stephen originally purchased insurance from Grange, his automobile insurance policy included the purchase of UM/UIM coverage with limits of $50,000 per person and $100,000 per accident. Part C of that policy describes in painstaking, if not simple, detail the scope of the UM/UIM coverage available to Stephen under his policy of insurance with Grange. The record reflects that Stephen maintained UM/UIM coverage on the family's vehicles until 1992, when he executed a document boldly labeled, "Personal Policy Change Request." Under the part of that form designated, "Vehicle Coverages/Premi-

ums," there are "0s" placed where one would find the UM/UIM coverage limits. Stephen signed the document and just above his signature is the following handwritten notation: "500 ded. on vehicle 1987 Chev. & 86 Van # 142 comp. & col. No UM on any vehicles." Three years later, Stephen signed a similar agreement, again reflecting his desire to avoid paying the premiums necessary for UM/UIM coverage described in the original policy.

{¶ 37} At his deposition, Branch did not deny filling out and signing the forms described above. Branch did not maintain that the forms were fraudulent or otherwise invalid. Had the record contained such information, there might have been a genuine issue of fact sufficient to preclude summary judgment against appellants. Rather, Branch testified that while he generally and vaguely recalled purchasing insurance on the various vehicles his family owned over the years, he had no specific memory of reviewing or signing any of the forms involved. The following excerpt from Branch's deposition is illustrative:

{¶ 38} "Q. * * * [T]he documents that I've shown you, I believe, show Plaintiff's Exhibit 1 that coverage was purchased including uninsured motorist coverage, and Defendant's Exhibit C, that this coverage continued for a period of four or five years. And, then, Defendant's Exhibit A that there was a rejection document you signed requesting that no coverage for uninsured motorist be continued. Would you have any recollection that would dispute that?

{¶ 39} "A. I don't recall that.

{¶ 40} "Q. But do you have any knowledge or any information that would dispute that that's what happened?

{¶ 41} "A. No. Is that what this paper says?

{¶ 42} "Q. I would purport that that's what Defendant's Exhibit A says that it was zero uninsured motorist coverage. Then, it says at the bottom 'No UM on any vehicles.' And, then, it has an 'X' and your signature that you've identified; so, yes, I would suggest that that's what that says. Again, you don't have any information or knowledge that would dispute that these documents are accurate, would you?

{¶ 43} "A. I have no information to dispute one way or the other."

{¶ 44} Accordingly, while Branch's recollection of the circumstances surrounding his purchase of the automobile insurance might have been somewhat vague, his testimony in no way impugned the validity of the documents depicting the contractual relationship between Branch and Grange.

{¶ 45} These documents, including the original insurance policy reflecting the UM/UIM coverage that Branch purchased and maintained for nearly five years and the subsequent policy change forms reflecting his rejection of that coverage,

explicitly demonstrate Grange's offer of UM/UIM coverage and Branch's rejection of that offer. Therefore, they conform to the dictates of former R.C. 3937.18. A review of *Gyori, Linko,* and their progeny reveals nothing to alter such a conclusion. Certainly, it does not suggest, as the majority claims, that the circumstances presented here ought to invalidate Branch's rejection of UM/UIM coverage.

{¶ 46} In determining that Branch's rejection is invalid, the majority disregards the evidence, including Branch's own testimony, demonstrating that he knew precisely what he was doing when he decided to forgo UM/UIM coverage, and opts instead to assume that he was incapable of understanding the details of his coverage. According to the majority, the fact that the insurance consumer actually understood the ramifications of his decisions concerning the purchase of insurance is irrelevant, unless the contemporaneous offer and acceptance are readily available, written in language so specific that it cannot be overlooked or misunderstood by even the most unsophisticated reader, and preferably, on one single page because, "any rejection or exclusion should be conspicuous so that a customer is aware of its existence." Otherwise, the majority contends, those insurance decisions become questionable or even invalid. The facts of this case do not call for such a disturbingly paternalistic view of the consumer. The record before this court plainly reflects that Branch's rejection of UM/UIM coverage was a completely informed decision based on rational financial considerations. Nothing in this record invalidates that decision.

{¶ 47} While UM/UIM rejection cases appear before us and similar courts of review in Ohio on many, many occasions, only one other court has embraced an expansion of *Gyori* and *Linko* similar to that espoused by the majority. In *Johnston v. Wayne Mut. Ins. Co.,* 4th Dist. No. 02CA3, 2002-Ohio-6157, 2002 WL 31522569, the court held that *Linko* required the insurance company to include all the necessary information on the same form as that reflecting the rejection. Id. at ¶ 51. *Johnston,* however, is factually distinguishable from the circumstances presented in this case. Here, Branch initially accepted the company's offer of UM/UIM insurance, opted to maintain the coverage on his family's vehicles for nearly five years, then chose to reject it. Such a scenario is in marked contrast to the situations in *Johnston, Gyori* and *Linko* where the insureds involved simply rejected UM/UIM coverage from the outset as a matter of company policy without a meaningful explanation from the insurer about what such coverage involved.

{¶ 48} Thus, since the record reflects that Grange did explicitly offer the UM/UIM coverage as contemplated under former R.C. 3937.18 and Branch did explicitly reject such coverage, there was no genuine issue of material fact to preclude the trial court from resolving this case in favor of appellees as a matter

of law and nothing in either the *Gyori* or *Linko* decisions otherwise impugns that determination. For those reasons, therefore, I dissent from the majority's decision to reverse the judgment and remand this matter for further proceedings.