OPINION
{¶ 1} Plaintiff-Appellant Gregory Comeans is appealing the decision of the Montgomery County Court of Common Pleas granting a motion for summary judgment filed by his employer's automobile insurance carrier, Defendant-Appellee Protective Insurance Company ("Protective"), and overruling Comeans' motion for partial summary judgment.
 {¶ 2} On December 19, 2000, Comeans was injured in an automobile accident while driving a tractor-trailer owned by his employer, Dayton Freight, Inc., in the course and scope of his employment. At the time of the accident, Dayton Freight was under two policies of insurance by Protective that provided coverage from March 1, 1999 through March 1, 2001. The parties stipulated that Comeans, at the time of the accident, was not an officer or director at Dayton Freight. Comeans brought this action against the tort-feasor, Arnold B. Clark, Jr., for damages sustained in the accident.
 {¶ 3} The trial court consolidated this case with the case filed by Dayton Freight to recover property damages for their truck that was damaged in the accident. Comeans filed an amended complaint thereafter, seeking uninsured/underinsured ("UM/UIM") coverage from Protective. Clark settled with Comeans and Protective, which has left only Comeans' UM/UIM claim against Protective.
 {¶ 4} On July 2, 2003, Comeans and Protective filed a stipulation of facts and cross-motions for summary judgment on the issue of coverage. On October 28, 2003, the trial court granted Protective's motion for summary judgment and overruled Comeans' motion for summary judgment. The trial court found that (1) Comeans was not an insured under the policy for UM/UIM coverage because the policy's definition of "related insureds" specifically named the board of directors and the officers of Dayton Freight, and did not mention employees such as Comeans, thus the rule of law in Scott-Pontzer v. Liberty Mut. Fire Ins.Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, is inapplicable; (2) the self-retention in the policy did not negate the applicability of R.C. 3937.18; and (3) a genuine issue of fact remained regarding whether the UM/UIM coverage within the policy was properly offered and rejected.
 {¶ 5} Comeans appeals this ruling, asserting three assignments of error.
 {¶ 6} Prior to addressing Comeans' assignments of error, a brief discussion of the standard of review is necessary, as the standard is the same for all of the issues that follow.
 {¶ 7} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Graftonv. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citingDupler v. Mansfield Journal Co. (1980), 64 Ohio St.2d 116,119-120, 413 N.E.2d 1187. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153.
 {¶ 8} Summary judgment can be appropriately granted where (1) "there is no genuine issue as to any material fact; (2) * * * the moving party is entitled to judgment as a matter of law; and (3) * * * reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46; see, also, Civ.R. 56(C). The movant has the burden to prove that no genuine issues of material fact exist by specifically pointing to evidence in the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which show that the non-movant has no evidence to support its claims.Harless, supra; Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 622 N.E.2d 264; Civ.R. 56(C).
 {¶ 9} Comeans first assignment of error:
 {¶ 10} "The lower court committed reversible error in finding that there was a question of fact as to whether Defendant Protective Insurance Company made a proper offer of uninsured/underinsured motorist coverage. (Decision, P. 12). (Assignment of error I and IV)."
 {¶ 11} Comeans contends that the trial court erred in failing to find that UM/UIM coverage existed by operation of law because that there had been no valid written offer and rejection of UM/UIM coverage. Specifically, Protective failed to properly offer UM/UIM coverage within the policy, as the written offer had failed to state the premium for the mandatory offer of UM/UIM coverage under Linko v. Indemnity Insurance Co.,90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
 {¶ 12} "It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state. R.C.3937.18(A). Failure to do so results in the insured acquiring UM coverage by operation of law." Gyori v. Jonhston Coca-ColaBottling Group, Inc. (1996), 76 Ohio St.3d 565, 567,1996-Ohio-358, 669 N.E.2d 824.
 {¶ 13} Under Linko, a valid offer of UM/UIM coverage must inform the insured of the availability of UM/UIM coverage, briefly describe this type of coverage, state the premiums for this type of coverage, and offer coverage equal to the liability limits in order for the offer to be validly rejected. Id. at 449. In Manalo v. Lumberman's Mut. Cas. Co., Montgomery App. No. 19391, 2003-Ohio-613, this Court held that a valid offer and rejection of UM/UIM existed where the rejection form failed to meet the requirements under Linko, but where the insurance company offered extrinsic evidence in the form of an affidavit that the insured had knowledge of the higher premium for the offered UM/UIM coverage.
 {¶ 14} In Hollon v. Clary, 155 Ohio App.3d 195,2003-Ohio-5734, ¶ 17, 800 N.E.2d 86, we expressly overruledManalo "to the extent that it holds that an offer of uninsured/underinsured motorist insurance need not state the premium to be charged for the coverage when there is extrinsic evidence that the insured is already aware of the premium." UnderHollon, Linko compliance must be shown within the four corners of the offer of UM/UIM insurance.
 {¶ 15} In this instance, the trial court relied on deposition statements from Thomas Cronin, President of Dayton Freight, and John Mitchell, Vice President of Protective, to conclude that a genuine issue of fact existed regarding whether Protective had made a proper offer of UM/UIM coverage.
 {¶ 16} Given the law under Hollon, we would be inclined to sustain this assignment of error. A review of the record reveals that the rejection form did not meet the Linko requirements for a valid offer and rejection of UM/UIM coverage. Under Hollon,
Protective cannot prove the requirements were fulfilled by submitting an affidavit stating that the requirements of Linko
were met. Because this written offer and rejection of UM/UIM coverage was not valid, UM/UIM coverage arises in this instance by operation of law in amounts equal to the liability limits of the Protective policy.
 {¶ 17} Accordingly, we would otherwise sustain Comeans' first assignment of error, but because of our disposition of the second and third assignments of error, we find this first assignment to be harmless error and therefore overrule it.
 {¶ 18} We will address Comeans' second and third assignment of error together, as the arguments presented under these assignments of error are related.
 {¶ 19} Comeans' second assignment of error:
 {¶ 20} "The lower court committed reversible error in finding that Plaintiff Gregory Comeans was not an insured under the Protective Insurance Company policy even though he was an employee driving a covered auto in the course and scope of employment at the time of the accident. (Decision, p. 7). (Assignments of Error I and II)."
 {¶ 21} Comeans' third assignment of error:
 {¶ 22} "The lower court committed reversible error in finding that the board of directors and officers were insured for the automobile coverage in the policy and that their status as insureds removed the Scott-Pontzer ambiguity in the policy (Decision, p. 7). (Assignments of Error I and III)."
 {¶ 23} In general, insurance policies are generally interpreted by applying rules of construction and interpretation applicable in contract law. Gomolka v. State Auto. Mut. Ins.
(1982), 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347. If the language of the insurance policy is susceptible to more than one interpretation, the language will be construed strictly against the insurer and liberally in favor of the insured. Faruque v.Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34,508 N.E.2d 949. However, the general rule of liberal construction cannot be used to create an ambiguity where one does not exist.Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163,166-167, 462 N.E.2d 403. If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning.Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 607,1999-Ohio-322, 710 N.E.2d 677.
 {¶ 24} In these two assignments of error, Comeans claims that the trial court erred in failing to find that he was an insured under the policy as an employee of Dayton Freight, who occupied a vehicle owned by Dayton Freight and acted within the scope of his employment. Specifically, Comeans disagrees with the trial court's interpretation that he was not an "insured" under the policy because the policy listed other individuals as insureds. Comeans claims that the presence of other individuals listed on the policy does not destroy the Scott-Pontzer ambiguity. To the contrary, under Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, the policy must provide UM/UIM coverage for employees in the course and scope of their employment when the corporation is named as an insured.
 {¶ 25} We must review the pertinent portions of the policy to make this decision. The Indemnity Agreement, specifying the policy's coverages, states that Protective has agreed to provide, inter alia, personal injury liability, property damage liability and UM/UIM coverage. Under the Declarations portion of the policy, the "named insured" is listed as "DAYTON FREIGHT LINES, INC." Endorsement No. 1 clarifies that the "related insured" is "Quality Fleet Services, Inc. dba Dayton Freight Lines, Inc." and "Kelley Transportation." Within the "Definitions," section J, "insured" is defined as follows:
 {¶ 26} "Each of the following is an insured to the extent set forth below:
 {¶ 27} "(1) The `named insured' as designated in the Declarations;
 {¶ 28} "(2) The `related insured(s)' * * *
 {¶ 29} "(5) If the `named or related insured' is a corporation, the board of directors and the officers appointed by the board of directors while acting within the scope of their duties as such[.]"
 {¶ 30} Based upon this provision in the policy, the trial court found that Dayton Freight was a corporation and that the policy identified the board of directors and the officers of the corporation as having been within the class of "insureds," thus there existed no ambiguity under Scott-Pontzer.
 {¶ 31} We agree. When underinsured coverage arises by operation of law, the court must look to the definition of who is an insured in the liability section of the policy to determine who is an insured for coverage imposed by operation of law.Luckenbill v. Midwesterrn Indem. Co. (2001),143 Ohio App.3d 501, 758 N.E.2d 301.
 {¶ 32} In Scott-Pontzer, the Ohio Supreme Court held that a commercial automobile policy issued to an employer provided UM/UIM coverage to the estate of an employee killed in an automobile accident. The Court found that if it is not clearly and unambiguously identified within the policy who is an "insured," a court must follow the rules of contractual construction to identify who is an "insured" under the policy. Id. The policy in Scott-Pontzer defined those insured under the policy as "you," which the policy defined as the "named insured." Id. Although the policy listed the named insured as the corporation, the Court determined that the policy's definition of the insured was ambiguous and that "you" was open to more than one interpretation. Id. The Court reasoned that a corporation is not a person and is therefore not capable of acting or being injured. Id. Because a corporation can only act through its employees, its employees are deemed insured for the purpose of UM/UIM coverage. Id.
 {¶ 33} The policy at issue requires that the claimant be a member of the board of directors or an officer of Dayton Freight who is acting within the scope of their duties. We do not find that this policy language is unclear or ambiguous in identifying who is an "insured." Moreover, this definition is not open to more than one interpretation. Because the policy specifically identifies who is an insured in this case, there is noScott-Pontzer ambiguity in the definition of "insured" under Protective's policy. This situation is similar to that in Dillenv. National Fire Ins. of Hartford, Summit App. No. 21471, 2003-Ohio-5777 at ¶ 32, whereby the appellate court found noScott-Pontzer ambiguity where the policy required that, to qualify for coverage, the claimant had to be an "executive officer, director, stockholder of RD, or an employee acting within the scope of employment." The court found that the plain meaning of the words included specific identities of who was insured within the corporation and thus found that there was noScott-Pontzer ambiguity. Id.
 {¶ 34} Under the stipulations entered into by the parties, Comeans was not a member of the board of directors or an officer of Dayton Freight. He was an employee of Dayton Freight. As such, he failed to meet the requirements and does not fall within the definition of "insured" under the policy.
 {¶ 35} Comeans briefly argues that he must be an insured under the policy because it would have been "illegal" for Dayton Freight to permit him to drive their trucks without proof of insurance. The financial responsibility statute is contained in R.C. 4509.101. R.C. 4509.101 states that "[n]o person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle." The statute requires proof of financial responsibility, but it does not require the maintenance of UM/UIM coverage.
 {¶ 36} In this case, the indemnity agreement states that liability coverage will be provided where there is loss resulting from an "occurrence arising out of trucking operations[.]" In this regard, we find that Dayton Freight did have liability insurance, but that this was unrelated to the maintenance of UM/UIM coverage in this case.
 {¶ 37} Accordingly, we must overrule Comeans' second and third assignments of error.
 {¶ 38} The judgment of the trial court is affirmed.
Fain, P.J. and Brogan, J., concur.