OPINION
{¶ 1} Tobin Borger appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Utica National Insurance Group's ("Utica") motion for summary judgment and denied Borger's motion for summary judgment on Borger's claim for uninsured/underinsured motorist ("UM/UIM") coverage under a policy of insurance issued by Utica to his employer, RJ Truck and Auto Body, Inc., dba R J Trucking ("RJ Trucking").
 {¶ 2} The following facts are undisputed:
 {¶ 3} On March 7, 2000, a vehicle driven by Jessica Finklea collided with a 1999 Mack truck that was owned by RJ Trucking and driven by Borger during the course of his employment. Borger settled with Finklea's auto insurance carrier, Nationwide Insurance Company, for the per person policy limit of $50,000.
 {¶ 4} At the time of the accident, RJ Trucking had a commercial auto policy of insurance with Utica ("the policy"). The policy provided liability coverage in the amount of $1,000,000. UM/UIM coverage was provided in the amount of $25,000 per accident and per person. The effective policy period was from December 30, 1998, to December 30, 2001. The policy is governed by R.C. 3937.18, as amended by Am.Sub.H.B. No. 261 ("H.B. 261"), effective September 3, 1997.
 {¶ 5} On March 7, 2002, Borger filed a complaint seeking UM/UIM benefits under the policy. Utica responded that Borger was not injured by an underinsured motorist and that he was not entitled to UIM benefits. The parties subsequently filed cross-motions for summary judgment on Borger's claims. In his motion, Borger argued that he was an insured under Utica's auto policy issued to RJ Trucking and that the company's reduction of UM/UIM coverage failed to comply with Linko v. Indemnity Ins.Co. of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338. Borger thus argued that UM/UIM coverage arose by operation of law in the amount of $1,000,000, the limit of RJ Trucking's liability coverage. Utica responded that the UM/UIM rejection/selection form was valid, because the two affidavits of Mark Carrocce, Vice President of RJ Trucking, established that RJ Trucking had knowingly and expressly opted to select Ohio UM/UIM coverage in the amount of $25,000 per person and per accident. Utica further argued that Borger was not an underinsured motorist, because he had received $50,000 from the tortfeasor, which was more than the $25,000 UM/UIM coverage under the policy. Utica also argued that there was "other evidence throughout the Utica policy of RJ Trucking's intent to select $25,000 Ohio UM/UIM limits."
 {¶ 6} The trial court agreed with Utica. Following our decision in Manalo v. Lumberman's Mut. Cas. Co., Montgomery App. No. 19391, 2003-Ohio-613, the court concluded that extrinsic evidence, such as affidavits, are permitted to satisfy theLinko requirements for a valid rejection/selection of UM/UIM coverage. Considering Carrocce's affidavits, the court found that the policy met the requirements set forth in Linko and that a UM/UIM coverage limit in the amount of $1,000,000 did not arise by operation of law. The court further concluded that the Ohio Uninsured Motorist Coverage Endorsement in the policy indicated that RJ Trucking had reduced its UM/UIM coverage limits to $25,000 and, thus, Borger was not underinsured. The court therefore overruled Borger's motion for summary judgment and sustained Utica's cross-motion for summary judgment.
 {¶ 7} Borger raises one assignment of error on appeal.
 {¶ 8} "I. The trial court erred to the prejudice of the plaintiff-appellant in sustaining defendant's cross-motion for summary judgment and denying plaintiff's motion for summary judgment."
 {¶ 9} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Stateex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 10} Borger claims that the trial court erred in considering extrinsic evidence when determining if there was a meaningful offer and corresponding reduction or rejection of UM/UIM motorist coverage. He asserts that there is no "evidence within the four corners of the policy which shows [that Utica] disclosed the premiums for UM/UIM coverage to RJ."
 {¶ 11} At the time of Borger's accident, R.C. 3937.18(A) required insurance companies to offer UM/UIM coverage with every automobile liability or motor vehicle liability policy delivered or issued in Ohio. Former R.C. 3937.18(A). "Failure to do so result[ed] in the insured acquiring UM coverage by operation of law." Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, 567, 1996-Ohio-358, 669 N.E.2d 824.
 {¶ 12} Pursuant to the changes made by H.B. 261, R.C. 3937.18
further provided:
 {¶ 13} "(C) A named insured or applicant may reject or accept both coverages as offered under division (A) of this section or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. The schedule of limits approved by the superintendent may permit a named insured or applicant to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile liability or motor vehicle liability policy of insurance under which the coverages are provided, but the limits shall be no less than the limits set forth in section 4509.20 of the Revised code for bodily injury or death. A named insured's or applicant'srejection of both coverages * * *, or a named insured's orapplicant's selection of such coverages * * * shall be in writingand shall be signed by the named insured or applicant. A namedinsured's or applicant's written, signed rejection of bothcoverages as offered under division (A) of this section * * *shall create a presumption of an offer of coverages consistentwith division (A) of this section, and shall be binding on allother named insureds, insureds, or applicants." (Emphasis added).
 {¶ 14} In Linko, a case involving a policy not subject to H.B. 261, the Supreme Court of Ohio held that a valid offer of UM/UIM coverage must inform the insured of the availability of UM/UIM coverage, briefly describe this type of coverage, state the premiums for this type of coverage, and offer coverage equal to the liability limits in order for the offer to be validly rejected. Linko, 90 Ohio St.3d at 449; see Comeans v. Clark,
Montgomery App. No. 20239, 2004-Ohio-2420. In Kemper v. MichiganMillers Mut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101,781 N.E.2d 196, the supreme court stated, in response to a certified question from the United States District Court for the Northern District of Ohio, that the Linko requirements applied to policies of insurance written after the enactment of H.B. 261 and before Am.Sub.S.B. No. 97, effective in 2001, which removed the mandatory requirement that insurers include UM/UIM coverage. TheKemper court further indicated that a signed rejection doesnot act as an effective declination of UM/UIM coverage where there is no other evidence of an offer of coverage.[1]
 {¶ 15} "In Manalo v. Lumberman's Mut. Cas. Co., Montgomery App. No. 19391, 2003-Ohio-613, this Court held that a valid offer and rejection of UM/UIM existed where the rejection form failed to meet the requirements under Linko, but where the insurance company offered extrinsic evidence in the form of an affidavit that the insured had knowledge of the higher premium for the offered UM/UIM coverage." Comeans, supra, at ¶ 13-14. Six months later, in Dirksen v. Philpot, Darke App. No. 1610, 2003-Ohio-4320, we stated that the selection form at issue did not comply with Linko, for the same reasons that we stated inManalo. We indicated that "we do not think our reasoning inManalo is flawed" regarding whether the selection form metLinko's requirements. We note, however, that we did not discuss in Dirksen whether extrinsic evidence could have been used to cure the defective selection form.
 {¶ 16} Subsequently, in Hollon v. Clary,155 Ohio App.3d 195, 2003-Ohio-5734, 800 N.E.2d 68, we expressly overruledManalo "to the extent that it holds that an offer of uninsured/underinsured motorist insurance need not state the premium to be charged for the coverage when there is extrinsic evidence that the insured is already aware of the premium." Id. at ¶ 17; see also Comeans, supra, at ¶ 13-14. We reasoned:
 {¶ 17} "Upon further reflection, we agree with the United States Court of Appeals for the Sixth Circuit when it stated that `[n]othing in the Ohio Supreme Court's answer [in Kemper] suggests that extrinsic evidence can be used to support a signed rejection. The only basis in Kemper for inferring that extrinsic evidence could be used comes from the question certified to the Ohio Supreme Court by a federal district court in the Northern District of Ohio. By asking whether a signed rejection alone (without extrinsic evidence, such as oral evidence) constitutes a valid rejection, the question did, to an extent, intimate that extrinsic evidence could be used in the determination of whether a rejection was valid. But the question was not drafted by the Ohio Supreme Court; it was drafted by a federal district court. The Ohio Supreme Court therefore has in no way undercut its rulings that the premium for insurance must be stated in the written offer, see Linko, 739 N.E.2d at 342, and that this requirement still applies after the passage of H.B. 261, see Kemper, 781 N.E.2d at 196. Bound by those statements, we must hold the offer * * *, which did not state the premium, to be fatally defective.'" Hollon, supra, at 199-200 (quotingRoberts v. Universal Underwriters Ins. Co. (C.A. 6, 2003),334 F.3d 505, 510, at n. 4) (citations omitted). Thus, as we recently reiterated in Comeans, "[u]nder Hollon, Linko compliance must be shown within the four corners of the offer of UM/UIM insurance." Comeans, supra, at ¶ 14.
 {¶ 18} Utica asserts that Manalo was correctly decided and urges us to return to that holding by overruling Hollon. Utica argues that in Kemper, the Supreme Court of Ohio did not preclude the use of extrinsic evidence to establish the fourLinko requirements. Rather, it argues that, in answering the second certified question in the negative, "the Kemper Court declined to explain, and in doing so, implicitly adopted the form of the certified questions, both of which recognize that H.B. 261 allows extrinsic evidence to demonstrate the validity of an offer of UM/UIM coverage."
 {¶ 19} We see no reason to alter our stance that extrinsic evidence may not be used to demonstrate compliance with Linko.
In Linko, the Supreme Court of Ohio clearly expressed that extrinsic evidence may not be used to determine whether an offer or a rejection of UM/UIM coverage was validly made. It stated: "We conclude that the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds. Again, we citeGyori, which requires a written offer and a written
rejection of UM/UIM coverage. In Gyori, this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. This court stated that the requirement of written offers `will prevent needless litigation about whether the insurance company offered UM coverage.' Id., 76 Ohio St.3d at 568, 669 N.E.2d at 827. By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds." Linko,90 Ohio St.3d at 450.
 {¶ 20} Utica argues that "[h]ad the Court [in Kemper] wished to continue the prohibition of extrinsic evidence thatLinko and Gyori imposed on pre-H.B. 261 offers, the Court was free to say so in Kemper." In our judgment, Utica misreadsKemper. In Kemper, the second certified question accepted by the supreme court provided: "[D]oes, under H.B. 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?" By answering in the negative, the supreme court did not indicate that a waiver of UM/UIM coverage could be established through extrinsic "oral or documentary" evidence, nor does the certified question suggest that the use of extrinsic evidence is permissible. Rather, Kemper merely indicates that there must be evidence of an offer of coverage and that the signed rejection is an insufficient basis from which to infer a valid offer. Kemper does not suggest that the supreme court's prior pronouncement that "the issue of whether coverage was offered and rejected should be apparent from the contract itself" no longer applies.
 {¶ 21} We note that, since Hollon, we have had three occasions to reconsider our holding in that case and have chosen not to do so. See Pitsenbarger v. Foos, Miami App. Nos. 2003-CA-22, 26, and 27, 2003-Ohio-6534, at ¶ 30-33; Evans v.Wallen, Montgomery App. No. 20171, 2004-Ohio-1166; Comeans,
supra. In addition, the courts of appeals in Ohio are virtually unanimous in their conclusion that extrinsic evidence is not permissible to determine whether a valid offer of UM/UIM coverage has been made. See Glover v. Smith, Hamilton App. Nos. C-020192 and C-020205, 2003-Ohio-1020, at ¶ 18 (holding that the requirements of Linko must appear within the four corners of the insurance policy); Shindollar v. Erie Ins. Co.,148 Ohio App.3d 537, 2002-Ohio-2971, 774 N.E.2d 316; Johnston v. WayneMut. Ins. Co., Pickaway App. No. 02CA3, 2002-Ohio-6157; Jordanv. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002-CA-248, 2003-Ohio-1309; Branch v. Lapushansky, 153 Ohio App.3d 170,2003-Ohio-3465, 792 N.E.2d 213; Kalista v. Pacific Employer'sIns. Co., Cuyahoga App. No. 82286, 2003-Ohio-3031, at ¶ 33;McNeeley v. Pacific Employers Ins. Co., Franklin App. No. 02AP-1217, 2003-Ohio-2951, at ¶ 15. Accordingly, we reaffirm our holding in Hollon that extrinsic evidence is not permissible to establish that an offer and a rejection of UM/UIM insurance were validly given.
 {¶ 22} Utica further argues that, in Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, the supreme court recognized that "the role of a court is to give effect to the intent of the parties to the agreement." Utica states that the intent of the parties, i.e., Utica and RJ Trucking, is clear. It notes that the policy states in three places — (1) page one of the Ohio UM Endorsement — Bodily Injury, (2) Endorsement 8E1613S, and (3) the rejection/selection form — that Ohio UM/UIM coverage is $25,000 per person and per accident. Thus, Utica argues that the policy "clearly reflects, in several places, RJ Trucking's intent to reduce the Ohio UM/UIM limits to $25,000."
 {¶ 23} The supreme court's opinion in Galatis does not alter our determination. Where an insurer fails to satisfy the four Linko requirements and the insured consequently fails to validly reject UM/UIM coverage, the insurer cannot circumvent its failure by pointing to the reduced UM/UIM coverage amounts in the policy. When an offer of UM/UIM coverage is not valid and the consequent reduction/rejection of UM/UIM coverage is not valid, those reduced/rejected terms cannot be enforced, regardless of whether the parties would have taken the same action and, in fact, had intended to do so if the insurer's offer of UM/UIM coverage had complied with Linko.
 {¶ 24} Moreover, there is no indication that the supreme court intended for Galatis to affect Linko's requirements regarding a waiver of UM/UIM coverage. As stated in Johnson v.Liberty Mut. Fire Ins. Co., Franklin App. No. 03AP-674, 2004-Ohio-1979:
 {¶ 25} "We are not inclined to read Galatis as advocating the use of extrinsic evidence to ascertain the parties' intent. First, the Galatis court, while discussing the intent of the parties, continued to stress the contractual language of the policy. `Scott-Pontzer [v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660] ignored the intent of the parties to the contract. Absent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees.' Galatis, at ¶¶ 39. The Galatis court did not refer to the use of extrinsic evidence during this discussion. There was no mention of relying upon deposition transcripts or affidavits. Accordingly, we do not believe the use of the phrase `intent of the parties' was anticipated by the Galatis court to permit the admission of extrinsic evidence to establish a knowing and expressly made waiver of UM/UIM coverage.
 {¶ 26} "Second, there is no reference to Linko in theGalatis decision. As such, we are hesitant to conclude the Supreme Court of Ohio intended to reverse its explicit holding inLinko. In other words, without the Supreme Court specifically stating so and explaining its reasons for changing its position, we conclude extrinsic evidence is not admissible to prove a waiver of UM/UIM coverage was knowingly and expressly made. Support for this position is found in the fact this is precisely what the Supreme Court did in Galatis as to the holding ofScott-Pontzer." Id. at ¶ 25-26.
 {¶ 27} We therefore conclude that an insurer may not use extrinsic evidence to demonstrate compliance with Linko, nor may the policy language cure a defective offer of UM/UIM coverage, even if the parties intended for the insured's rejection to be effective. Upon review of the selection form at issue, it is clear that RJ Trucking's form does not comply withLinko's requirements in that it fails to state the premium for UM/UIM coverage. Because Utica's offer did not meet Linko's requirements, RJ Trucking did not validly reject UM/UIM coverage. Accordingly, UM/UIM coverage arises by operation of law in the amount of RJ Trucking's liability limit, which is $1,000,000.
 {¶ 28} Borger is entitled to summary judgment on his claim for UM/UIM coverage under RJ Trucking's policy of insurance with Utica. The trial court thus erred in denying his motion and in granting Utica's motion for summary judgment.
 {¶ 29} The assignment of error is sustained.
 {¶ 30} The judgment of the trial court will be reversed and remanded for further proceedings consistent with this decision.
Fain, P.J. and Brogan, J., concur.
[1] Utica cites to our decision in Purvis v. Cincinnati Ins.Co., Greene App. No. 2001-CA-104, 2002-Ohio-1803, for the proposition that H.B. 261 created a presumption of the validity of an offer of Ohio UM/UIM coverage. In Purvis, we stated that H.B. 261 "supersed[ed] Linko's requirements regarding a valid offer of UIM coverage." We thus concluded that the plaintiff was not an insured under an umbrella policy, because the company had rejected UIM coverage in writing, the rejection created a rebutable presumption of an offer of coverage effective on the day it was received, and the plaintiffs had not offered any evidence to rebut this presumption. In light of Kemper, which was decided subsequent to our decision in Purvis, Purvis's holding that Linko does not apply to policies governed by H.B. 261 is no longer good law.